## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In or about August 2016, in the District of Maryland and elsewhere, the Defendant, **DEVIN HEFLIN** ("**HEFLIN**"), knowingly and willfully conspired with **Kevin Capers** ("**Capers**"), Co-conspirator 1, Co-conspirator 2, and others to execute a scheme and artifice to defraud Wells Fargo Bank, N.A. ("Wells Fargo") and to obtain money under the custody and control of Wells Fargo by means of materially false and fraudulent pretenses, representations, and promises. Based on the length of **HEFLIN**'s involvement in the fraudulent conduct, his relationship with other conspirators, and information provided to him by others, at least $60,000 in actual or intended loss was foreseeable to **HEFLIN** and within the scope of his agreement.

On or about August 10, 2016, **HEFLIN** recruited Co-conspirator 1 and Co-conspirator 2 to meet him at a strip mall near the Wells Fargo branch in Quince Orchard, Maryland, with the promise that these co-conspirators could make some money. When the co-conspirators met up with **HEFLIN** at the designated meeting location, **HEFLIN** instructed these co-conspirators to enter the Quince Orchard Wells Fargo branch and meet with the bank manager (**Capers**).

On or about August 10, 2016, at approximately 4:30 p.m., the two co-conspirators entered the bank and met with **Capers**. During their meeting, **Capers** added Co-conspirator 2 as an authorized user on Victim 1's account ending in 7629 ("7629 account") without Victim 1's knowledge or consent. **Capers** assisted the two co-conspirators immediately to withdraw $18,000 in cash from the 7629 account. **Capers** also provided Co-conspirator 1 and Co-conspirator 2 with a debit card to access Victim 1's account. Co-conspirator 1 and Co-conspirator 2 then left the bank with an envelope containing the cash withdrawn from the 7629 account and the debit card and met up again with **HEFLIN**. Co-conspirator 1 and Co-conspirator 2 each received approximately $500 for their role in the scheme to obtain money from Victim 1's account. At approximately 7:08 p.m. the same day, another co-conspirator withdrew $2,000 from the 7629 account at the Rivertowne Commons Wells Fargo ATM without Victim 1's knowledge or consent.

On or about August 11, 2016, **HEFLIN** instructed Co-conspirator 2 to meet him at another strip mall in Columbia, Maryland. On August 11, 2016, Co-conspirator 2 met up with **HEFLIN** and an additional certain co-conspirator. The certain co-conspirator drove Co-conspirator 2 to the Gateway Overlook branch of Wells Fargo located in Elkridge, Maryland. The certain co-conspirator provided Co-conspirator 2 with a piece of paper that had Victim 1's name and bank account information on it. Co-conspirator 2 then entered the Gateway Overlook branch and obtained two $10,000 cashier checks (for a total of $20,000) from the 7629 account without Victim 1's knowledge or consent.

In each instance, Co-conspirator 2 provided the proceeds of the fraud to Co-conspirator 3. Heflin was present for these exchanges.

**HEFLIN**'s co-conspirators conducted additional fraudulent transactions with Victim 1's 7629 account in the name of Co-conspirator 2. In total, **HEFLIN** and his co-conspirators caused approximately $60,000 of losses to Victim 1's 7629 account as a result of the fraud scheme.

Throughout the timeframe of the conspiracy, Wells Fargo was a financial institution, within the meaning of 18 U.S.C. § 20, and was insured by the Federal Deposit Insurance Corporation.

SO STIPULATED:

*Kristi O'Malley*
Kristi N. O'Malley
Assistant United States Attorney

*Devin Heflin*
Devin Heflin
Defendant

*Marc Hall*
Marc G. Hall, Esq.
Counsel for Defendant